**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MARY EASTER, as Special ) <br> Administrator for the Estate ) <br> of Billy Patrick, deceased, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OKLAHOMA DEPARTMENT OF ) <br> WILDLIFE CONSERVATION; and ) <br> JARED CRAMER, in his ) <br> individual capacity, ) <br> ) <br> Defendants. ) | Case No. CIV-16-168-KEW |

## OPINION AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (Docket Entry #58). On April 26, 2015, Decedent Billy Patrick ("Patrick"), Carl Locke ("Locke"), and Lyndi King ("King") went fishing at a pond in an area known as Sanders Flats located in rural Adair County, Oklahoma at around 8:30 a.m. They fished on the east side of the pond by their vehicle. Patrick and King proceeded to the northwest corner of the pond while Locke remained close to the vehicle. After fishing for approximately one hour, Game Warden Cody Youngblood ("Youngblood") appeared at the pond near Patrick and King. Youngblood wrote Patrick a ticket for fishing without a license. Patrick walked to Locke's location and told him what had happened. Game Warden Jared Cramer ("Cramer") heard on his radio that Youngblood was in contact with at least two people and that they both had warrants for their arrest out of the State of Arkansas. He did not know the basis for the warrants.

Cramer went to Youngblood's location to assist him because the radio traffic indicated Youngblood would be taking the subjects into custody. Cramer approached from the west and pulled in next to Youngblood on the passenger side of his truck. Cramer exited his vehicle and asked Youngblood which subject had a warrant. Youngblood indicated the individual with the white t-shirt which would later be determined to be Patrick. Cramer noted Patrick was pacing. Cramer drove to the other side of the pond where Patrick and Locke were located.

Cramer asked Patrick to put his hands on the bed of Patrick's truck and asked if he had any weapons on her person. He then asked Patrick to place his hands behind his back and point his thumbs up. Immediately after this instruction, Patrick ran to Cramer's right toward the slope down to the pond. Cramer pursued Patrick and tackled him with both individuals falling to the ground. The two men rolled on the ground into the water of the pond.

The details of the altercation which occurred in the pond and on its banks are in considerable dispute. Cramer testified that Patrick resisted during the entire struggle, charged at Cramer after regaining his feet, and tried to take Cramer to the ground. Cramer states that Patrick tackled him into the pond and Cramer landed on his back. Cramer testified that Patrick was on top of him while Cramer's head was under two feet of water and that Patrick would force him back into the water every time he attempted

2

to raise his head above the water.  Cramer stated he believed Patrick was trying to drown him.  Cramer testified Patrick was off of him and Cramer was attempting to get to his feet and draw his weapon.  Cramer stated that when Patrick was "coming back to me" and he fired his weapon at Patrick as he got to Cramer – about half an arm's length away.  Patrick died from his wounds received from Cramer's weapon.

Conflicting testimony concerning whether Cramer was justifiably in fear of his life was offered by both King and Locke.  King testified Youngblood told her to get in his truck.  She could see Cramer in the water but not Patrick.  She saw Cramer was standing at the time of the shooting.  She never saw Patrick running at Cramer.  She observed space between Cramer and Patrick.

Locke testified that Patrick was trying to get up out of the water and away from Cramer and in trying to get up, Patrick pushed on Cramer and Cramer went under the water.  At counsel's suggestion in Locke's deposition, Locke estimated the duration of Cramer's submersion under the water "like you're being baptized."  Patrick then got to his feet and Cramer tried to knock Patrick's legs out from under him from behind striking on the back of Patrick's legs.  Patrick dropped on his butt in the mud, facing Cramer.  Cramer regained his knees.  Patrick tried to turn and get away and was using Cramer to get himself out of the water.  He was on one knee and did not regain his feet when Cramer shot him.  Although Cramer

3

and Patrick had a hold on one another, Patrick did not look like he was doing anything but trying to get away, according to Locke.

Plaintiff initiated this action on May 6, 2016, alleging Cramer violated Patrick's constitutional rights under the Fourth Amendment as enforced through 42 U.S.C. § 1983 by employing excessive force in shooting and killing Patrick. Plaintiff also asserted a claim for negligence against Defendant Oklahoma Department of Wildlife Conservation ("ODWC") under the Oklahoma Governmental Tort Claims Act, contending that Cramer's use of force exceeded the amount reasonably necessary under the circumstances, causing Patrick's death.

Defendants filed the subject Motion asserting (1) Cramer is entitled to qualified immunity because no violation of the Fourth Amendment occurred and the law was not clearly established that Cramer's actions violated the Constitution; and (2) Cramer was not negligent and Plaintiff cannot recover against ODWC under the Oklahoma Governmental Tort Claims Act.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Universal Money Centers v. A.T. & T.</u>, 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052, 115 S.Ct. 655,

130 L.Ed.2d 558 (1994). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed 2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. <u>Applied Genetics v. Fist Affiliated Securities</u>, 912 F.2d 1238, 1241 (10th Cir. 1990); <u>Posey v. Skyline Corp.</u>, 702 F.2d 102, 105 (7th Cir. 1983).

Cramer asserts qualified immunity and, in doing so, first asserts that no violation of the Fourth Amendment occurred. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity," <u>Cillo v. City of Greenwood Village</u>, 739 F.3d 451, 459 (10th Cir. 2013), which "shields public officials ... from damages actions unless their conduct was unreasonable in light of clearly established law," <u>Gann v. Cline</u>, 519 F.3d 1090, 1092

5

(10th Cir. 2008)(quotations omitted). Generally, "when a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." Cillo, 739 F.3d at 460.

The Fourth Amendment to the Constitution precludes an illegal "seizure" of a citizen through the use of excessive force. U.S.C.A. Const. Amend. IV. The question to be answered in a qualified immunity context on excessive force claims is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). Under the totality of the circumstances approach, the court is required to consider a balance of the factors of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. If the force employed is deadly force, the officer's use of force is reasonable only "if a reasonable officer in Defendants' position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others." Estate of Larsen ex re. Sturdivan v. Murr, 511 F.3d 1255, 1260 (10th Cir. 2008); *see also* Tennessee v.

Garner, 471 U.S. 1, 11 (1985).  An important aspect of the inquiry is "whether the officers were in danger at the precise moment that they used force."  Phillips v. James, 422 F.3d 1075, 1083 (10th Cir. 2005).

The facts in this case are simply in dispute as to the level of threat under which Cramer was under when an unarmed Patrick tried to elude him during the attempted arrest.  Undoubtedly, Patrick laid hands upon Cramer during the course of the struggle to free himself from Cramer's grasp.  The evidence is inexorably disputed, however, as to whether Patrick was attempting to drown Cramer at the time Cramer chose to shoot him and whether an objectively reasonable officer would have determined that deadly force was the appropriate use of force under the circumstances.

"Because the reasonableness inquiry overlaps with the qualified immunity analysis, 'a qualified immunity defense [is] of less value when raised in defense of an excessive force claim.' [Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir. 2001)] (citing Quezada v. County of Bernalillo, 944 F.2d 710, 718 (10th Cir. 1991).  Whether an officer acted reasonably in using deadly force is 'heavily fact dependent.'  Romero v. Board of County Comm'rs, 60 F.3d 702, 705 n. 5 (10th Cir. 1995) (quoting Wilson v. Meeks, 52 F.3d 1547, 1553 (10th Cir. 1995)."  Olsen v. Layton Hills Mall, 312 F.3d 1304, 1314 (10th Cir. 2002).  Given the considerable dispute in the facts, this Court cannot determine that Cramer is entitled

to qualified immunity at this time.

The second prong of the qualified immunity test requires that this Court determine that the law was clearly established at the time of the incident. In evaluating whether the right was clearly established, the court considers whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he or she violated that right. Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007). "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'" Lobozzo v. Colo. Dept. of Corr., 429 Fed.Appx. 707, 710 (10th Cir. 2011). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001). *see also* Medina, 960 F.2d at 1498. On the other hand, the Supreme Court has observed that it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the

right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001). A court should inquire "whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for cases with precisely the same facts." Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004).

The law was clearly established at the time of this incident that deadly force was only justified when a suspect "poses a significant threat of death or serious physical injury to the officer or others." Garner, 471 U.S. at 3. Again, a dispute remains as to whether Cramer was under such a threat given the facts and circumstances of this case. Taking the facts as presented by Plaintiff in a light most favorable to Plaintiff, summary judgment is not currently appropriate.

For precisely the same reasons, summary judgment is not appropriate on the negligence claim Plaintiff asserts against ODWC. The use of force was appropriate only if the "suspect poses an immediate threat to the safety of the officers or others", among other factors. Morales v. City of Okla. City ex rel. Okla. City Police Dept., 230 P.3d 869, 880 (Okla. 2010). As stated, the facts surrounding the level of threat posed by Patrick to Cramer is in significant dispute.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Docket Entry #58) is hereby **DENIED** in toto.

IT IS SO ORDERED this 30th day of October, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE