```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA
```

MARY EASTER, as Special          )
Administrator for the Estate     )
of Billy Patrick, deceased,      )
                                 )
            Plaintiff,           )
                                 )
v.                               )   Case No. CIV-16-168-KEW
                                 )
OKLAHOMA DEPARTMENT OF           )
WILDLIFE CONSERVATION; and       )
JARED CRAMER, in his             )
individual capacity,             )
                                 )
            Defendants.          )

## OPINION AND ORDER

This matter comes before the Court on Defendant Oklahoma Department of Wildlife Conservation's Motion for Summary Judgment (Docket Entry #121). The procedural and appellate record in this case requires a preliminary recitation of the events which have transpired before addressing the facts on summary judgment.

Plaintiff commenced this case on May 6, 2016, alleging

> . . . an action for negligence in violation of the Oklahoma Governmental Tort Claims Act ("GTCA") and the deprivation of rights secured by the Fourth Amendment to the United States Constitution, actionable through 42 U.S.C. § 1983 arising from the use of deadly force by an employee of the Oklahoma Department of Wildlife Conservation ("ODWC") to stop a decedent who was suspected of committing the misdemeanor crime of fishing without a license.
> At the time he was shot, decedent was unarmed and did not pose a threat of serious bodily injury to the ODWC employee or anyone

>else.     The    shooting    was    objectively
>unreasonable under the circumstances, and the
>amount of force used was disproportionate the
>(sic) any threat of harm, real or perceived.

<u>Complaint</u>, Docket Entry #3, pp. 1-2.

After reciting the factual allegations surrounding the its claims, Plaintiff Mary Easter, as Special Administrator for the Estate of Billy Patrick, deceased (the "Estate") identifies two bases for recovery: (1) Excessive Force under 42 U.S.C. § 1983; and (2) Negligence under Okla. Stat. tit. 51 § 151 *et seq.* The federal Section 1983 claim is asserted against Defendant Jared Cramer, in his individual capacity ("Cramer") while the state negligence claim is expressly asserted against ODWC which is alleged to be "statutorily liable for the actions of its employees taken within the scope of their employment consistent with the provisions of the GTCA."

On October 30, 2017, this Court entered an Order denying Cramer's and ODWC's requests for summary judgment and associated claim for qualified immunity. Specifically, it was determined that the facts surrounding the incident resulting in the death of Billy Patrick were in "significant dispute" on the issue of whether Patrick "pose[d] a significant threat of death or serious physical injury to [Cramer] or others" to justify Cramer's use of deadly force. In the same Order, summary judgment on the negligence

2

claim asserted against ODWC was also denied based upon the perceived dispute in the material facts. *See* Opinion and Order, Docket Entry #103, p. 9.

Thereafter, on October 31, 2017, Cramer appealed the denial of qualified immunity to the Tenth Circuit Court of Appeals. *See* Docket Entry #105. The case was stayed pending the determination on appeal. See Docket Entry #107.

On September 19, 2019, the Tenth Circuit reversed this Court's determination and remanded the case for the entry of judgment in favor of Cramer on qualified immunity. *See* Docket Entry #113, #114. In so doing, the Court relied upon the following set of facts:

> On April 26, 2015, at around 8:30 a.m., [Billy] Patrick, Carl Locke ("Locke"), and Lyndi King ("King") went fishing at a pond in rural Adair County, Oklahoma. They fished on the east side of the pond by their vehicle. Patrick and King moved to the northwest corner of the pond while Locke remained close to the vehicle.
> Approximately one hour after they arrived, Oklahoma State Game Warden Cody Youngblood ("Youngblood") appeared at the pond near Patrick and King. Youngblood wrote Patrick a ticket for fishing without a license. Afterward, Patrick walked over to Locke and told him what had happened.
> The defendant-appellant Game Warden Jared Cramer heard on his radio that Youngblood had contacted at least two individuals for whom the State of Arkansas had issued arrest warrants. Cramer did not know the basis for the warrants. Cramer went to

3

> Youngblood's location to assist him because the radio traffic indicated Youngblood intended to take the subjects into custody.
>
> As Cramer approached the pond from the west, he pulled in next to Youngblood on the passenger side of Youngblood's truck. After exiting his vehicle, Cramer asked Youngblood which individuals had a warrant. Youngblood identified Patrick, who Cramer noted was pacing.
>
> After speaking with Youngblood, Cramer drove to the other side of the pond where Patrick and Locke were located. When he arrived, Cramer asked Patrick to put his hands on the bed of Patrick's truck and asked Patrick if he had any weapons. Cramer then asked Patrick to place his hands behind his back and point his thumbs up. Immediately after receiving that instruction, Patrick ran to Cramer's right towards the slope down to the pond. Cramer pursued Patrick and tackled him. Patrick and Cramer then rolled into the pond.
>
> As the altercation continued in the pond, Cramer shot Patrick twice, killing him. Although some testimony regarding the altercation in the pond is inconsistent, the undisputed facts establish that when Cramer and Patrick landed in the pond, Patrick rested on top of Cramer and Cramer was under water. Then as the altercation persisted, Patrick pushed Cramer under water at least one time. At some point, Patrick rose up out of the water, and Cramer shot him. Little—if any—space separated the two men at the time of the shooting.

*See* Docket Entry #113, pp. 2-3.

The Tenth Circuit also noted the following:

> In her briefing, Appellee suggests that Lindi King's testimony established that Patrick and Cramer were not near each other at

>  the time of the shooting (thus suggesting that Cramer could not reasonably have believed he was in danger). At oral argument, however, Appellee conceded that King did not quantify the distance between Patrick and Cramer at the time of the shooting. Indeed, King admitted that she could not see Patrick at the time of the shooting and she repeatedly deferred to Locke—who she described as "the one that saw more than [her]." Locke testified at his deposition that Patrick was only inches away from Cramer when Cramer shot him.
>
>  Id. at n.3.

The Tenth Circuit concluded that this set of facts did not put Cramer on notice that the use of deadly force would result in the violation of a clearly established right. Id. at p. 12. The case was remanded for the entry of summary judgment for Cramer on qualified immunity.

On October 24, 2019, this Court conducted a telephonic conference with counsel for all litigants upon receiving the Tenth Circuit's opinion. In the Opinion and Order denying summary judgment on the negligence claim asserted against ODWC, this Court utilized the same set of facts as employed in denying qualified immunity on the 42 U.S.C. § 1983 excessive force claim. The Tenth Circuit reviewed this Court's Opinion and Order on qualified immunity *de novo*. Fancher v. Barrientos, 723 F.3d 1191, 1194 (10th Cir. 2013). Easter was required to show that (1) a reasonable jury could find facts supporting a violation of a

constitutional right that (2) was clearly established at the time of the Defendants' conduct. Estate of Booker v. Gomez, 745 F.3d 405, 418 (10th Cir. 2014). In its opinion, the Tenth Circuit had to conclude that the operative facts viewed most favorable to Easter were not sufficient to establish a violation of clearly established law – contrary to this Court's conclusion that the facts were in dispute as to whether Cramer's fear for his life was objectively reasonable in light of Patrick's position and Cramer's position at the time Cramer shot and killed Patrick.  Indeed, as related herein, the Tenth Circuit specifically found that Locke's testimony as to the position of Patrick and Cramer, stating they were "inches away" from one another, controlled over King's testimony that they were far apart.  Rather than concluding that a dispute in the facts precluded a finding that clearly established law had not been violated, the Tenth Circuit adopted the testimony of Locke as to their relative positions.1  Consequently, this Court permitted the filing of a second motion for summary judgment by

---

1 The Tenth Circuit stated, "The undisputed facts identified by the district court do not permit an inference that at the time of the shooting Patrick no longer presented a threat to Cramer, whom he had seconds before pushed under the water. [In a footnote, citing to difference in testimony between King and Locke and adopting Locke's version of the facts as to the proximity of Patrick to King].  To the contrary, the undisputed record establishes that as he attempted to evade Cramer, Patrick landed on top of Cramer as they entered the pond and then shoved Cramer under the water during the course of the altercation. Thus, although Patrick was unarmed, Cramer remained in a vulnerable position, and a reasonable officer would have reason to believe that Patrick might use the water to drown him if the altercation continued." See Docket Entry #113, pp. 11-12.

the remaining Defendant, ODWC because of the Tenth Circuit's finding that Locke's testimony established the positions of the parties effectively overruled this Court's finding of disputed facts on this key factual point.  It would create an inconsistency in judicial findings for the Tenth Circuit to conclude one set of facts were established by the evidence in a light most favorable to Easter as the non-moving party while this Court determines that the facts on a determined point are in dispute.  Easter's statement that nothing required reconsideration of the first denial of ODWC's summary judgment ignores the Tenth Circuit's express finding that the undisputed facts established the reasonableness of Cramer's conduct.  The circumstances have changed such that consideration of ODWC's legal arguments on the negligence claim is warranted.

ODWC's current summary judgment motions asserts that (1) Easter cannot recover under the Oklahoma Governmental Tort Claims Act ("OGTCA") for agency level actions or inactions by the leadership of the ODWC, including hiring, training, and/or supervision; and (2) Cramer's actions were objectively reasonable and, therefore, ODWC cannot be held liable for Cramer's negligence while acting in the course and scope of his employment.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

7

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Universal Money Centers v. A.T. & T., 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed 2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Applied Genetics v. Fist Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

ODWC first contends it does not know whether Easter is bringing her negligence claim against the agency due to actions or

8

inactions of the leadership – including the alleged negligent hiring, training, and/or supervision of Cramer – or whether the claim is brought due to Cramer's allegedly negligent actions as an employee of ODWC in using deadly force on Patrick. Easter does not shed any light on the precise nature of this claim other than to, again, assert ODWC should not be permitted to bring another summary judgment motion on this issue.

This Court looks to the Pretrial Order submitted by the parties, signed by the Court, and entered of record on October 31, 2017 to ascertain how Easter expressly set out her negligence claim. In the initial statement, Easter set out that the claims are for "negligence in violation of the [OGTCA] and deprivation of rights secured by the Fourth Amendment . . . actionable through 42 U.S.C. § 1983 arising from the use of deadly force by [Cramer], **an employee of the Oklahoma Department of Wildlife Conservation** . . . to stop decedent [Patrick] . . . ." *See* Docket Entry #106, p. 2 (emphasis added by this Court). Further, the statements of issues of fact and law in the Pretrial Order do not include any allegations of negligent hiring, supervision, or training – only allegations surrounding the reasonableness of Cramer's use of deadly force. Id. at pp. 5-6. Generally, "issues not contained in the resulting pretrial order were not part of the case before the district court." Cortez v. Wal-Mart Stores, Inc., 460 F.3d

1268, 1276–77 (10th Cir. 2006) citing Youren v. Tintic School District, 343 F.3d 1296, 1304 (10th Cir. 2003) and Wilson v. Muckala, 303 F.3d 1207, 1215 (10th Cir. 2002)("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived...."). As a result, Easter did not preserve any agency based negligence claims for adjudication in this action.

Even if Easter did preserve such claims in some form or fashion, the discretionary function exception to the OGTCA would preclude the assertion of such claims. The OGTCA represents the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort. Tuffy's Inc. v. City of Okla. City, 212 P.3d 1158, 1163 (Okla. 2009). The OGTCA recognizes the ability of the state entity to claim sovereign immunity but sets out the specific circumstances under which the state waives its immunity and that of its political subdivisions. Okla. Stat. tit. 51, § 152.1; see also Smith v. City of Stillwater, 328 P.3d 1192, 1198 (Okla. 2014). The OGTCA also sets out a list of activities for which sovereign immunity is not waived, including the "[p]erformance of or the failure to exercise or perform any act or service, which is in the discretion of the state or political subdivision or its employees." Okla. Stat. tit. 51 § 155(5). The Oklahoma Court of Civil Appeals has found that "[i]t is . . . settled that a [political subdivision's] hiring, training, and

10

supervising decisions are discretionary and therefore [the state] may not be liable for damages resulting from those decisions. Jackson v. Oklahoma City Pub. Sch., 333 P.3d 975, 979 (Okla. Ct. Civ. App. 2014) citing Houston v. Independent School Dist. No. 89 of Oklahoma County, 949 F.Supp.2d 1104, 1109 (W.D.Okla. 2013); 51 O.S.2011 § 155(5).

Further, as our sister court in the Northern District of Oklahoma has noted "the clear weight of authority supports finding that hiring, training, supervision, monitoring, and retention are actions that implicate a political entity's policy and planning functions and therefore fall under the discretionary function exemption of § 155(5). See Johnson v. Indep. Sch. Dist. No. 89 of Okla. Cnty., No. CIV-15-680-D, 2016 WL 1270266, at *8 (W.D. Okla. Mar. 31, 2016) (negligent supervision); Burris v. Okla. ex rel. Okla. Dep't of Corrections, No. CIV-13-867-D, 2014 WL 442154, at *9 (W.D. Okla. Feb. 4, 2014) (negligent hiring, training, supervision, and retention); Seals v. Jones, No. 12-DV-569-JED-TLW, 2013 WL 5408004, at *4 (N.D. Okla. Sept. 25, 2013) (negligent hiring and retention); Houston, 949 F. Supp. 2d at 1109 (negligent supervision and retention); Fumi v. Bd. of Conty. Comm'rs of Rogers Cnty., No. 10-CV-769-TCK-PJC, 2011 WL 4608296, at *6 (N.D. Okla. Oct. 3, 2011) (negligent training and supervision); Burns v. Holcombe, No. 09-CV-152-JHP, 2010 WL 2756954, at *15 (E.D. Okla.

11

July 12, 2010) (negligent hiring, training, and supervision); Jackson v. Okla. City Pub. Schs., 333 P.3d 975, 979 (Okla. Civ. App. 2014) (negligent hiring, training, and supervision." Langkamp v. Mayes Emergency Servs. Tr. Auth., 2017 WL 875483, at *4 (N.D. Okla. Mar. 3, 2017), motion for relief from judgment granted, 2017 WL 1102650 (N.D. Okla. Mar. 23, 2017). Consequently, Easter is barred from pursuing a claim against ODWC based in the negligence of the leadership of the entity including claims for negligent hiring, supervision, and training as exempted under the OGTCA.

Easter's remaining avenue for recovery under a negligence theory is based upon Cramer's actions as an employee of the ODWC. As with any negligence action, "[t]he threshold question . . . is whether the defendant owed a duty of care to the plaintiff." Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't, 230 P.3d 869, 878 (Okla. 2010).  "A police officer's duty is very specific:  it is to use only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest."  Id. at 880.

In its analysis, the Tenth Circuit specifically found that "even taking the facts in the light most favorable to Plaintiff, Patrick was on one knee; was only partially turned; and, when

12

Cramer shot him, remained in a position to resume what a reasonable officer could have believed was an attempt to drown Cramer." The Court further determined that "although Patrick was unarmed, Cramer remained in a vulnerable position, and a reasonable officer would have reason to believe that Patrick might use the water to drown him if the altercation continued." These findings leave no doubt that the Tenth Circuit's interpretation of the facts were that the level of deadly force used by Cramer was objectively reasonable in light of the objective circumstances presented. The Tenth Circuit considered several of the same factors evaluated by the Oklahoma Supreme Court in Morales to reach its conclusion of reasonableness. *See* Docket Entry #113 at pp. 9-10; Morales, 230 P.3d at 880. Again, an unacceptable inconsistency would result if this Court were to interpret the facts or reach conclusions found by the Tenth Circuit – even in an interlocutory appeal. Because Cramer's actions were objectively reasonable, he did not violate the legal duty to Patrick in the use of deadly force. Easter's negligence claim must fail.

IT IS THEREFORE ORDERED that Defendant Oklahoma Department of Wildlife Conservation's Motion for Summary Judgment (Docket Entry #121) is hereby **GRANTED**.

IT IS SO ORDERED this 24th day of June, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE